Good afternoon. Welcome back. The next case on the docket is 525-0142. Entering the Commitment of Anthony Meadows. Good afternoon. Emily Fitch appearing on behalf of the petitioner, the respondent, Anthony Meadows. You may begin. May I please report? Counsel. Good afternoon, Justices. And I apologize, my voice is not quite what it normally is. I'm recovering from sickness, but I should be able to muddle through. On behalf of Mr. Meadows, as the Court is, I'm sure, well aware, there were essentially four issues that were pointed out in the The four general issues were first whether the trial court erred in limiting the questions asked by counsel for a respondent during The second issue was whether statements made by the State tainted and prejudiced the jury as it caused an unfair trial. The third issue was whether the trial jury erred in finding the respondent to be a sexually violent person. And then the fourth issue was whether the trial court erred in denying the respondent conditional release. The focus of my argument this afternoon is mainly the first three issues. Those are the primary, essentially the cruxes. If Mr. Meadows had not been found to be a sexually violent person, well, the issue of conditional release wouldn't have been an issue. And really, whether the trial, the jury erred as to finding Mr. Meadows to be a sexually violent person is prefaced on the first two arguments. Whether the trial court erred in denying or limiting questions during voir dire. And second, whether statements made by the prosecution prejudiced the jury as to cause an unfair trial. During voir dire, I would note that in the brief filed by the State on behalf of the appellee, they focused a lot on a statement made by a respondent during voir dire as to whether the jurors agreed that sex offenders should be locked up forever and ever. This question was objected to by the prosecution. It was sustained by the trial court. The trial court believed that that was potentially in violation of the motion in limine, filed by the State, specifically paragraph 8 of that motion in limine. I would note that paragraph 8 of the motion in limine specifically prohibits discussing whether a sexually violent person should be indeterminately committed. Either way, this was the focus of the appellee brief. The issue, though, is not necessarily that question. When respondent was objected to, basically asked, told the trial court that they would ask a broader question. The issue was that there were many jurors who openly admitted that they had biases toward convicted sex offenders. Respondent's goal was to dig deeper into those potential prejudices, those biases. That's the goal of voir dire is to find a fair and impartial jury, which is incredibly difficult in sexually violent person cases. Generally, people are open, the jurors are open about their biases. But not everyone just openly admits that they have a bias or prejudice, or isn't necessarily even aware of it. I would note, specifically in R99, there was a question inquired of the jurors, what are your thoughts on people who have been convicted of a sex crime? That question was also objected to. But I think that would be an important question to pull out potential prejudice and bias from jurors. In R104, the trial court also sustained an objection when discussing different types of movies and novels. And the point of that wasn't to get way off base. The point of that was to dig deeper, instead of just asking people outright, are you prejudiced or biased with regard to convicted sex offenders? The point of that is to find out what those biases are without directly asking that question, since people don't always openly admit that. We believe that the trial court erred in limiting the questions that were offered by respondents during voir dire. The next issue was to prosecution's remarks about treatment. This was both during voir dire and also during closing argument. The appellee of the state argues in their appellee brief that these arguments were essentially waived because there was no objection made. And I would acknowledge to the court that there was not an objection during voir dire, there was not an objection during closing argument about that. But this was pointed out also, actually, in the appellee brief, in the case of People v. Logan, also the In Re commitment of Moore, a 2023 case in this district, that the court may excuse forfeiture if there is plain error, such that, one, evidence is closely balanced and the jury's guilty verdict may have resulted from that error, or the error was so fundamental and of such magnitude that the defendant was denied a fair trial, and the error must be remedied to preserve the integrity of the judicial process. I would offer to this court that while the statement is or, only one of these prompts must be met, I would offer that both were met by statements made by the state during voir dire and during closing argument. Essentially, it was a totality of the circumstances that the state discussed the issues of treatment. This was an overarching issue brought on by the state. They said, the defendant, or the respondent, he served his time. We just want him to make sure that he gets treatment. You as the jury get to decide whether he gets treatment. Specifically, in the supplemental record, H406, the prosecution stated, again, that's what we are here for, is we believe he, the respondent, needs intensive treatment that he would get from the Department of Human Resources if he's found to be sexually violent. Again, in the supplemental record, page 414, the prosecution stated, this is the only way we can guarantee that Mr. Meadows gets the treatment he needs, which is an intense treatment with the Department of Human Services. That's the only way he'll ever learn how to lower his risk of reoffending and learn how to control his urges. Again, supplemental record, page 428, and this prosecution stated, and again, the whole purpose of the SVP Act is not to punish him, but to get him the treatment he needs to keep him from doing this again. This court is aware, it's well-settled Illinois law, that in a criminal case, or a criminal jury trial, that the parties are prohibited from discussing the results of finding the defendant guilty, that he'll go to prison for a long time. He may serve at least six years in prison. That's prohibited. That's essentially what happened here, is that the prosecution jumped from just talking about, here's the elements of what we need to prove, or what we have, we argue that we have proven, to establish that Anthony Meadows is a sexually violent person. Instead, they jumped and said, he needs treatment. We believe that he needs treatment. If you think he needs treatment, you should find him to be a sexually violent person. These statements, the totality of these statements, created, arguably shifted the burden, but also tainted the jury and created some level of prejudice to where the jury is thinking, well, of course I want treatment. Everyone should get treatment. Therefore, because I think this person needs treatment, I should find them to be a sexually violent person, when that's not the legal standard. Any questions? No. Thank you. Good afternoon. Thank you. Good afternoon, Your Honors. I'm Assistant Attorney General Rachel Michalczewski for the People. All of Respondent's claims are forfeited, either because trial court failed to present them adequately to the court, or because trial counsel failed to preserve them properly by objecting during trial or filing a post-trial motion. But even if these claims are not forfeited, they are ultimately meritless. As counsel pointed out, there are four claims here. First, that the trial court erred in entering a dispositional order, committing Mr. Meadows to treatment at the TDF facility as opposed to placing him in conditional release. Second, that the evidence was insufficient to find Respondent to be a sexually violent person. Third, that the prosecutors erred in making comments about treatment post-finding that Mr. Meadows was an STP. And fourth, that the trial court erred when it limited a voir dire for Respondent's counsel. I'm going to discuss the forfeiture aspect of all of these claims first, and then I'll briefly discuss the merits. Under Illinois Supreme Court Rule 341H7, all points that are not argued in the appellant brief are forfeited, and argument on the appellant brief must contain citations to the record as well as relevant authority. Here, when we turn to the claim that the court erred in terms of its dispositional order, counsel doesn't explain how the court erred or how what the court did was lacking. Nor does it contain citations to the record or citations to relevant case law. Similarly, the insufficiency of the evidence claim does not explain why the evidence is insufficient, nor does it contain citations to relevant cases, nor does it contain citations to the record itself. Given that lack of argument, these claims are forfeited pursuant to Illinois Supreme Court Rule 341 and cannot be reviewed by this court on this ground. Is a forfeiture something that we're bound by? Or can we essentially overlook the forfeiture and go to the merits? Yes, Your Honor, you're bound by Illinois Supreme Court rules, and so and that rule is specific that even though something might be forfeited, in this circumstance, it can't be raised by counsel on reply brief nor can it be raised in oral argument either. And here no reply brief was filed, so we have just the conclusory statements by counsel in the briefs to go off of. But if the court were to look past the forfeiture and look to the merits of either of these two claims, it would be also unsuccessful because these claims ultimately are meritless on the heel as well. But before I get to the merits of these two claims, I'd like to just address the forfeiture at trial. During trial, as counsel concedes, there was no objection made either to the prosecutor's statements on treatment nor to the limitation that the court put on Guadir. There was no post-trial motion, and so the claims are forfeited. And as counsel points out, forfeiture, there can be an exception to forfeiture in that context when respondent can show plain error. But respondent didn't argue plain error in her brief and she didn't file a reply brief, so a plain error exception is forfeited and she can't rely on appellant's brief to make her plain error arguments. Additionally, as it relates to the Guadir claim, respondent in her brief articulates this claim as, the trial court erred in preventing defense counsel to ask jurors questions regarding their opinions related to sex crimes during Guadir, but that characterization is simply not true. The trial court did permit counsel to ask about the subject fulsomely, asking a very broad question of, does anyone here feel strongly one way or the other about anyone who's been convicted of a sex crime? The court took questions on that, and it was only when respondent asked, do you think that a sex offender should be locked up forever and ever, that the court then called a sidebar with the parties and said that it believed that this line of questioning violated and then unobjected to state's motion in limine and asked for respondent's response. At that point there was no acquiescence. And acquiescence or invited errors preclude review by this court. But turning back to the question of the sufficiency of the evidence here, the evidence was sufficient. In fact, the evidence the state provided at trial clearly demonstrated that that respondent was an SDP. Insufficiency, if the court were to overlook the forfeiture and review this under as if it was presented on appeal, would have to view the evidence in the light most favorable to the people. At trial, there were three elements that the state had to prove. They had to prove that beyond a reasonable doubt that the defendant had a sexually violent conviction, that he had a mental disorder, and that that mental disorder made him substantially probable to re-offend. The only issue at trial was the question the only element at issue at trial was the question of whether or not the respondent had a mental disorder. But here the evidence sufficed to show that the defendant did in fact have pedophilic disorder because the jury could have relied on Dr. Stanislau of the state's expert's opinion that he did. Dr. Stanislau had testified that the DSM-5 characterizes pedophilic disorder as an intense, recurrent, persistent sexual interest in prepubescent children over a six-month period. And Dr. Stanislau concluded that the respondent had pedophilic disorder by highlighting several things about the respondent's history, namely that the respondent had been convicted of three different sexually violent offenses, two of which were against victims that were ten years or younger, and the third one was against a 21-year-old that was functioning mentally like a child. Additionally, Dr. Stanislau relied on different prison records where the respondent filled out a questionnaire saying that he believes that sex with children may sometimes be appropriate. And he also wrote that he was sexually attracted to his ten-year-old victim for about a year prior to that point. And the next time he was alone with her, he planned to have sex with her. All of these things demonstrate a persistent, intense interest in prepubescent children. And that's what Dr. Stanislau relied on when making her opinion. And when prosecutors asked respondent's experts how that statement didn't qualify as persistent interest in children for over six months, one of the respondent's experts, Dr. Cusio, said that he would have to review that further to determine whether that would affect his opinion. And the other expert, Dr. Louis Davis, said that this fact did not constitute persistent interest without any further elaboration. Thus, the evidence was sufficient and also not closely balanced to excuse any kind of plain error if that had been presented by counsel, given the relative strength of Dr. Stanislau's testimony and the weaknesses of respondent's expert. And finally, the Court were to overlook forfeiture as it relates to the fourth claim that respondent makes, which is that the trial court erred in terms of the dispositional order. That would also be unsuccessful given the merits. The trial court didn't use its discretion because the trial court considered the factors that it had to under law, the nature and circumstances of the behavior that was the basis of the necessary treatment. If you look at Record 492-93, the Court is considering all of these factors before entering its order, noting that the history made respondent sexually and physically violent and that he was concerned that respondent had not even done an assessment yet, which connects to considerations of what arrangements are preferable to ensure respondent's participation in necessary treatment. Here, the standard of review is abuse of discretion, and there's nothing in the record to suggest that the decision the Court made in committing respondent to the TDF was arbitrary, fanciful or unreasonable. And for all of these reasons, this Court should affirm the trial court's judgment. Thank you. Thank you very much. Thank you. Counsel, you have time. May it please the Court? Just a few issues that I wanted to address with the Court. The trial essentially came down to a battle of experts. Before you get to that, how do you address the State's argument with regard to forfeiture of earrings? As it relates to plain error? Yes. I believe the Court can, even without the party making that argument, can determine that plain error occurred in reverse of the trial court's decision. On what basis do we make that determination? I don't have any case law to cite that, but I believe, just based on prior research, that there have been multiple cases where this Court determined that there was plain error. And that there was grave injustice. And so if a party fails to raise that issue, then it being forfeited would defeat the purpose of preventing injustice. Well, I agree that most of the cases say that forfeiture is binding on the parties, but not the Court. And to what Justice Barbier said, I believe the State's argument is it wasn't argued at all in the brief. Therefore, we can't address it because it's not even argued in the brief. I think there's multiple occasions where this Court addresses issues that are not brought up in the brief, especially when it comes to procedural issues that neither party argues and the Court determines this is how we're going to rule based on something procedural versus something substantive that was argued in the briefs. Well, jurisdiction is something that this Court has to take up pretty much in every case to make sure we have jurisdiction. So I agree that there are certain instances where the Court has a duty to make sure we can proceed. But to the other issue about the forfeiture as to Issues 3 and 4, that Rule 341.H.7 basically would bar this Court from addressing the issues because there was really no valid argument and sites to the record enumerated in those two arguments. What is your response to that? I would argue that Issues 3 and 4 were essentially, well, they were brought up in the Statement of Facts. They were not specifically outlined in the argument, but they essentially rely on Issues 1 and 2. On the appellate brief, you have to provide citations and argument. You have to provide citations to each argument that you're presenting, and so you bring up an issue, as you say, in the Statement of Facts, but you don't have anything to support the argument in the argument section. Are we supposed to research it and fill in the blanks? Well, there was a citation to the statute, and the argument, while brief, was just that the trial court did not rely on the factors considering conditional release. So essentially, this was an issue of the battle of the experts. The jury determines to rely on strictly what Dr. Stanislaus said. While there were two experts in favor of the respondent, Mr. Meadows, there was only one expert in favor of the state, the prosecution, and both parties acknowledge that two against one doesn't mean you automatically win, because you have two experts in favor of one and one expert in favor of the other. The jury is obviously allowed to decide which experts they defer to. However, I think that also goes to the plain error argument that the evidence is closely balanced. The state argues that the evidence was not closely balanced, when, in fact, there were two experts in favor of the respondent. And the case of In Re Commitment Moore simply states that plain error can be if evidence is closely balanced, and the jury's guilty verdict may have resulted from that error. Thank you.